UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
Caption in Compliance with D.N.J. LBR 9004-2(c)

**Greenbaum, Rowe, Smith & Davis LLP**
Metro Corporate Campus One
P.O. Box 5600
Woodbridge, New Jersey 07095
(732) 549-5600
Attorneys for Debtor, Vintage Associates, LLC
David L. Bruck, Esq.

**The Kelly Firm**
1011 Highway 71, Suite 200
Spring Lake, New Jersey 07762-2030
(732) 449-0525
Attorney for Debtor, Henry V. Vaccaro, Sr.
Andrew J. Kelly, Esq.

| | |
|---|---|
| In re:<br><br>**VINTAGE ASSOCIATES, LLC,**<br><br>Debtor. | Chapter 11 Proceeding<br><br>**Lead Case No.:  13-17941 (RTL)**<br><br>*Jointly Administered*<br>Chapter 11 Proceeding |
| In re:<br><br>**HENRY V. VACCARO, SR.,**<br><br>Debtor. | **Case No.:  13-17946 (RTL)** |

---

**FIRST MODIFIED DISCLOSURE STATEMENT FOR
FIRST MODIFIED PLAN OF REORGANIZATION
OF DEBTOR, VINTAGE ASSOCIATES, LLC**

---

**PLEASE READ THIS DISCLOSURE STATEMENT CAREFULLY.  THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY BEAR UPON YOUR DECISION TO ACCEPT OR REJECT THE PLAN OF REORGANIZATION.  THE PLAN PROPONENT BELIEVES THAT THE PLAN OF REORGANIZATION IS IN THE BEST INTEREST OF THE CREDITORS AND THAT THE PLAN IS FAIR AND EQUITABLE. THE PROPONENT URGES THAT ALL CREDITORS ACCEPT THE PLAN.**

Greenbaum, Rowe, Smith & Davis LLP
Attorneys for Vintage Associates, LLC

*/s/David L. Bruck*

Dated:   September 13, 2013

By:_____
David L. Bruck, Esq.

1500539.04

## I.   __INTRODUCTION__

On April 15, 2013, Vintage Associates, LLC ("Vintage") and Henry V. Vaccaro, Sr. ("Vaccaro") (collectively, the "Debtors") commenced bankruptcy cases by filing voluntary Chapter 11 petitions under the United States Bankruptcy Code, 11 U.S.C. §101, et seq.  Chapter 11 of the Bankruptcy Code allows a debtor, and under some circumstances, creditors and other parties in interest, to propose a plan of reorganization (the "Plan"). The Plan may provide that the debtor will reorganize by continuing to operate, to liquidate by selling assets of the estate, or a combination of both.   Vintage owns several hundred pieces of memorabilia pertaining to the late Michael Jackson and members of the Jackson family as described in its Petition. Vaccaro has a general unsecured claim in the Vintage case and is an equity holder in Vintage. Vintage is the party proposing the Plan sent to you in the same envelope as this document.  Simultaneously, Vaccaro is proposing a Plan.  On August 26, 2013, Vintage filed its Plan and Disclosure Statement.  On September 13, 2013, Vintage filed this First Modified Plan and Disclosure Statement.  On August 26, 2013, Vaccaro filed its Plan and Disclosure Statement. This document is the Vintage First Modified Disclosure Statement (hereinafter referred to as the "Disclosure Statement").   A hearing on adequacy of the Disclosure Statement was held on _____ ____, 2013.  The Disclosure Statement was determined by the Court to be adequate for use in soliciting votes on the Plan.  **THE DOCUMENT YOU ARE READING IS THE DISCLOSURE STATEMENT FOR VINTAGE'S PLAN OF REORGANIZATION WHICH IS ATTACHED AS __EXHIBIT A__.**

This is a liquidating plan.  Vintage seeks to implement the Plan by the sale at auction of the memorabilia owned by Vintage in order to generate funds to pay allowed claims of creditors in accordance with the priorities set forth in the Bankruptcy Code.

2

ALL HOLDERS OF CLAIMS AND/OR EQUITY INTERESTS WITH RESPECT TO THE DEBTOR IS ENCOURAGED TO REVIEW THE FULL TEXT OF THE PLAN AND TO READ CAREFULLY THIS ENTIRE DISCLOSURE STATEMENT, INCLUDING ALL EXHIBITS. PARTICULAR ATTENTION SHOULD BE GIVEN TO THOSE PROVISIONS OF THE PLAN IMPAIRING THE RIGHTS OF CREDITORS AND/OR EQUITY INTEREST HOLDERS.

**THE BANKRUPTCY COURT HAS SCHEDULED A HEARING ON CONFIRMATION OF THE PLAN FOR _____ \_\_, 2013 AT 2:00 P.M. (EST)**. THE DISCLOSURE STATEMENT WAS APPROVED BY THE BANKRUPTCY COURT ON _____ \_\_, 2013. CREDITORS AND/OR EQUITY INTEREST HOLDERS ENTITLED TO VOTE ON THE PLAN SHOULD HAVE RECEIVED A BALLOT IN THE SOLICITATION PACKAGE CONTAINING THIS DISCLOSURE STATEMENT. YOUR VOTE IS IMPORTANT. THE DEBTOR BELIEVES THAT THE PLAN IS IN THE BEST INTEREST OF CREDITORS AND EQUITY INTEREST HOLDERS. THE DEBTOR URGES ALL CREDITORS AND EQUITY INTEREST HOLDERS ENTITLED TO VOTE ON THE PLAN TO VOTE IN FAVOR OF THE PLAN.

**ANY SUCH CREDITOR OR EQUITY INTEREST HOLDER WHO WISHES TO VOTE ON THE PLAN SHOULD (1) COMPLETE THE ENCLOSED BALLOT; AND (2) MAIL THE ORIGINAL BALLOT TO GREENBAUM, ROWE, SMITH & DAVIS, LLP, 99 WOOD AVENUE SOUTH, ISELIN, NEW JERSEY 08830, ATTN: DAVID L. BRUCK, ESQ. THERE WILL BE SEPARATE BALLOTS FOR VINTAGE CLAIMANTS AND VACCARO CLAIMANTS. THE DEADLINE FOR VOTING ON THE PLAN IS _____ \_\_, 2013. BALLOTS MUST BE RECEIVED BY GREENBAUM, ROWE, SMITH & DAVIS LLP ON OR BEFORE SUCH DEADLINE IN ORDER TO BE**

3

**COUNTED.   BALLOTS RECEIVED AFTER THE DEADLINE WILL NOT BE COUNTED.**

CREDITORS AND EQUITY INTEREST HOLDERS NEED NOT CAST A BALLOT TO RECEIVE A DISTRIBUTION UNDER THE PLAN.  THE PLAN, IF CONFIRMED, WILL BE BINDING ON EACH AND EVERY CREDITOR AND EQUITY INTEREST HOLDER OF THE DEBTOR, REGARDLESS OF WHETHER THE CREDITOR OR EQUITY INTEREST HOLDER VOTED FOR OR AGAINST THE PLAN.

THE REPRESENTATIONS IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN.  WHILE THE DEBTOR MAY FURNISH CREDITORS AND INTEREST HOLDERS WITH ADDITIONAL INFORMATION PRIOR TO THE VOTING DEADLINE IN ACCORDANCE WITH APPLICABLE LAW, THE DELIVERY OF THIS DISCLOSURE STATEMENT WILL NOT UNDER ANY CIRCUMSTANCES IMPLY THAT THE INFORMATION HEREIN IS CORRECT AS OF ANY TIME SUBSEQUENT TO THE DATE HEREOF.  THIS DISCLOSURE STATEMENT MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE WHETHER TO ACCEPT OR REJECT THE PLAN.  NOTHING CONTAINED IN THIS DISCLOSURE STATEMENT SHALL CONSTITUTE, OR BE DEEMED TO CONSTITUTE, ADVICE ON TAX OR OTHER LEGAL CONSEQUENCES OF ANY REORGANIZATION ON THE HOLDERS OF CLAIMS OR EQUITY INTERESTS.

THE INFORMATION IN THIS DISCLOSURE STATEMENT IS INCLUDED FOR THE PURPOSE OF SOLICITING ACCEPTANCES OF THE PLAN.  THE INFORMATION IS NOT TO BE CONSTRUED AS ADMISSIONS OR STIPULATIONS, BUT RATHER AS STATEMENTS MADE IN SETTLEMENT NEGOTIATIONS.

NO INDEPENDENT AUDIT WAS CONDUCTED OF THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT.  THIS DISCLOSURE STATEMENT WAS COMPILED FROM INFORMATION CONTAINED IN THE DEBTOR'S BOOKS AND RECORDS AND OTHER SOURCES BELIEVED TO BE ACCURATE TO THE BEST OF THE DEBTOR'S KNOWLEDGE.  THE INFORMATION IS TRUE AND CORRECT TO THE BEST OF THE KNOWLEDGE OF THE DEBTOR.  WHILE ALL REASONABLE EFFORTS HAVE BEEN MADE UNDER THE CIRCUMSTANCES TO BE ACCURATE, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THIS DISCLOSURE STATEMENT IS WITHOUT ERROR.  DEBTOR'S COUNSEL HAS NOT UNDERTAKEN ANY SEPARATE ANALYSIS OF THE INFORMATION CONTAINED HEREIN.  THUS, IT IS UNABLE TO WARRANT THAT THE DISCLOSURE STATEMENT IS WITHOUT ERROR.  HOWEVER, NEITHER THE DEBTOR NOR DEBTOR'S PROFESSIONAL IS AWARE OF ANY ERRORS OR OMISSIONS.

NO PERSON IS AUTHORIZED BY THE DEBTOR IN CONNECTION WITH THE PLAN OR SOLICITATION OF VOTES FOR THE PLAN TO GIVE ANY INFORMATION OR TO MAKE ANY REPRESENTATIONS OTHER THAN THOSE CONTAINED IN THIS DISCLOSURE STATEMENT AND THE ATTACHED EXHIBITS OR SCHEDULES.

## II.   DEFINITIONS

For purposes of this Disclosure Statement, all capitalized terms used but not defined herein shall have the meaning given them in the Plan.

## III.   THE DEBTORS

### A.   History

The Debtor, Vintage, acquired a warehouse full of memorabilia belonging originally to members of the Jackson family in 2002. The memorabilia were stored in a warehouse in California prior to that time and were assets in the bankruptcy proceeding

1500539.04

of Tito Jackson, the brother of Michael Jackson. Attached hereto as EXHIBIT B is an inventory of the memorabilia. While Tito Jackson had claimed the value of the memorabilia to be $5,000, in fact an appraisal at the time had valued a portion of the memorabilia to have a market value of $1 million to $1.5 million.

The order approving the sale was entered in the Bankruptcy Court on April 19, 2000. Some members of the Jackson family appealed from the Order approving the sale, but made no effort to enjoin the sale or post a bond. The sale went forward and an entity known as El-Rich Corporation purchased the memorabilia for $25,000 and the agreement to pay the warehouse bill where the memorabilia were stored. The sale was concluded in the Bankruptcy Court for the District of California on January 10, 2002.

On July 29, 2002, an entity identified as Vintage Pop Inc, a New Jersey corporation, purchased the memorabilia from El-Rich for $75,000. The shareholders of Vintage Pop, Inc. were Henry Vaccaro Sr, Henry Vaccaro Jr and Toni Bahary. The memorabilia is comprised of hundreds of pictures, posters, clothing and other items including master tapes containing music of Michael Jackson and the Jackson Five on a television series called "The Jacksons" which aired in 1978.

On November 27, 2006, Vintage Associates LLC, the Debtor in these proceedings, acquired the memorabilia from Vintage Pop, Inc for the purchase price of $100,000.

Also in November 2006, Vintage Associates LLC entered into an agreement with Universal Express Inc. and Richard Altamare whereby Vintage and Vaccaro agreed to sell the memorabilia including the master tapes for $4,000,000. The purchase price was to be paid by auctioning the memorabilia through Guernsey's Auction House at an auction to be held at the Hard Rock Hotel and Casino in Las Vegas, Nevada on May 30, 2007. Vintage was guaranteed to receive the first $3,850,000 from the auction

1500539.04

proceeds and was given a deposit of $150,000. At the time of the Auction, Michael

Jackson was alive and accordingly bidding was modest. A substantial portion of the

memorabilia was sold for approximately $900,000. Altamare made a side deal with

Guernsey whereby Guernsey was to be paid the first $750,000 together with attorney's

fees of approximately $150,000. Guernsey took all the proceeds and Vintage received

nothing. Several weeks after the auction, Altamare was arrested for securities fraud

and a receiver was appointed to take possession of the remaining memorabilia. Vintage

filed a lawsuit against the receiver and others and a settlement was reached whereby

the unsold memorabilia was recovered and turned back to Vintage.

In December 2009, Vintage and Vaccaro entered into agreements with Howard

Mann and his company, DC Netcast. The agreements were to provide for the

management and of the memorabilia through a new entity known as Vintage Pop, Inc.,

a California corporation, with Vaccaro, Vintage and Mann having an interest in Vintage

Pop, Inc. Mann never performed his obligations under the agreements and defaulted.

The agreements with Mann are listed on Schedule G of the Petition as executory since,

as a formal matter, they may never have been terminated; however, the Debtor will

object to any rejection damage claims which may be filed by Mann or his entities.

Mann owes Vintage in excess of $560,000 as set forth in the Petition.

In addition, Mann, Vintage and Vaccaro were then sued by the Estate of Michael

Jackson in the Federal District Court in California. The litigation sought to enjoin Mann,

Vintage and Vaccaro from exploiting the intellectual property pertaining to the

memorabilia which the Estate argued belonged to it.

On September, 2012, a settlement was entered into between the Estate, Mann,

Vaccaro and Vintage. The settlement includes, among other things, the agreement by

7

Mann not to exploit the intellectual property rights associated with the memorabilia; a finding by the Court that at the time of the bankruptcy sale of the memorabilia to El-Rich that no intellectual property was acquired, and the entry by consent of a judgment against Vintage in the amount of $500,000.  The judgment was reduced to a lien in New Jersey and is reflected in the schedules in the case as a secured claim.  The collateral is the memorabilia.

Once the Order restraining Mann from exploiting the intellectual property associated with the memorabilia was entered, Mann "sold" his interests, if any, to his counsel, Lee Durst in exchange for a release from his obligations to Durst for legal fees.  Some of the memorabilia thought to be slides depicting Michael Jackson was in Mann's possession and now is believed to be in Durst's possession.  The memorabilia believed to be in Durst's possession is property of the Debtor's estate.  Demand has been made upon Durst for the turnover of the memorabilia in his possession but, as of this date, he has refused to comply.  The Debtor has filed a turn-over action against Durst and DC NetCast for the return of the memorabilia.

Mann's entity, DC Netcast Media Group has filed a UCC financing statement in the office of the New Jersey Department of Treasury against Vintage in 2012 alleging that it holds a secured claim against the memorabilia in an unspecified amount.  The Debtor objects to the claim and has filed an adversary proceeding to avoid the filing and extinguish the claim.

Other claims have been filed or UCC financing statements appear of record by persons alleging that they are secured creditors including Nance Hutter, Industrial Distribution Corp., Gerald P. Hutter and Stephen Fernandez, Esq.  The Debtor has recently settled the Fernandez claim by Order entered on September 9, 2013 as Doc

1500539.04

#71.  The Debtor disputes the status of the remaining claims and either will or has filed motions to extinguish these claims.

### B.    The Chapter 11 Process

Vintage and Vaccaro each filed Chapter 11 petitions on April 15, 2013.  Neither Vintage nor Vaccaro has any income and few expenses other than insurance, U.S. Trustee fees and the accrual of professional fees.  During the proceeding, Vintage has marketed the memorabilia for sale to potential investors.   While several potential investors have surfaced and have made offers in amounts that would be sufficient to satisfy the claims against the Debtors and their estates, as of this date, none have posted the requested deposit.  As a result and in order to bring these proceedings to an end without further delay, the Debtors have collectively determined to liquidate the memorabilia by auction to generate the highest and best offers for the memorabilia to be distributed to stakeholders in the proceedings in accordance with the priorities in the Bankruptcy Code.

### C.    Creditor Body

The creditor body in both cases is comprised, in general, of administrative claims of professionals for the Debtors, the secured claim held by the Internal Revenue Service in the amount of $574,000 against both Debtors and the secured claim held by the Estate of Michael Jackson in the amount of $500,000 against only Vintage.  As noted, there are other claims that have been filed as secured including the DC Netcast UCC filing; a proof of claim filed by Stephen Fernandez Esq. claiming a secured interest in the memorabilia because of a charging lien granted in California by Vintage Pop Inc to Fernandez and his law firm in 2002 and then in 2007 which has been settled; and a UCC-1 filed against both Debtors by the Hutters and Industrial Distribution Corp.  The

9

Debtors do not believe that, other than the settled Fernandez claim, these are valid claims and either have or will object to allowance of such claims.

In addition, there are general unsecured claims in both cases aggregating $2,700,000 in the Vintage case and $2,200,000 in the Vaccaro case. Of these, $1,319,500 are duplicate claims and properly should be classified only in the Vintage case. Accordingly, unsecured claims are approximately $2,700,000 in the Vintage case and $900,000 in the Vaccaro case for a total creditor body in both cases of approximately $3,600,000.

Vaccaro has filed a proof of claim in the Vintage case for monies advanced to Vintage over the years in the amount of $957,993 and it is included in the above computation as a claim in Vintage.

### D.    **Assets**

1.    <u>Cash</u>:   Vintage presently has on hand approximately $100 in cash in the DIP operating account.

2.    <u>Property</u>:   Vintage owns the memorabilia. The master tapes, which are the most valuable asset held by Vintage, contain music from several episodes of a television series appearing in 1978 called "The Jacksons." At the Auction, nothing will be sold other than the memorabilia.

3.    <u>Accounts Receivable</u>: The Petition lists an account receivable owed by Howard Mann to Vintage in the amount of $560,000. No investigation has been made to date as to the collectability of this receivable.

4.    <u>Potential Causes of Action</u>: Vintage has breach of contract actions against Howard Mann and others. In addition to the extent that Lee Durst or others

10

remains in possession of property of the estate, Vintage has or will commence litigation against Lee Durst and others to recover property of the estate.

     5.   <u>Avoidance Actions</u>:  Vintage has made a preliminary analysis of avoidance actions as provided in the Bankruptcy Code including possible preference claims and fraudulent transfer claims against insiders and others, as well as any other cause of action which the Debtors own.  Vintage believes that there are no such claims.

### C.   **Liabilities**

    1.   <u>The Claims Process</u>:  Based upon the schedules as filed and the Claims Register as of the filing date of this Disclosure Statement, the claims of creditors in the case are as follows:

    (a)   <u>Administrative and Priority Claims</u>:

    (i)   Professional Fees accrued but not allowed or paid to date are estimated at $140,000.

    (ii)   Post-petition payables:  None.

    (iii)   Robert Rathe has an administrative claim for approximately $11,000 loaned to Vintage to buy insurance during the proceeding.

    (b)   <u>Secured Claims</u>:  There are three allowed secured claims, one held by the Internal Revenue Service in the amount of $574,000; one held by the Estate of Michael Jackson in the amount of $500,000; and the third held by Steven Fernandez in the agreed upon amount of $175,000.

    The Fernandez secured claim was originally in the amount of $319,000 and was disputed by the Debtors.  Subsequently,

Fernandez and the Debtors agreed to settle the secured claim in the Vintage case only at $175,000.

There are other secured claims arising from UCCs of record which the Debtor disputes.

(c)   Unsecured Claims:  Total scheduled unsecured claims in the Vintage case aggregate $2,700,000.

(d)   Executory Contracts:   Upon confirmation, any and all executory contracts not previously assumed or rejected will be deemed rejected.  All contracts listed on Schedule G of the Petitions are to be rejected.

### D.   Employment of Professionals and Payment of Interim Fees

By order entered on May 8, 2013, Vintage retained Greenbaum, Rowe, Smith & Davis LLP ("Greenbaum") as its attorneys.  No other professionals have been retained.

As of August 31, 2013, unpaid and unbilled fees to Greenbaum are approximately $140,000. It is anticipated that additional professional fees will accrue through plan confirmation.

In the event the cases are converted to Chapter 7, professional fees in such amount as shall be allowed by the Court in the Chapter 11 cases will be subordinated to the fees of Chapter 7 professionals.

### IV.   SUMMARY OF THE PLAN

The following is a brief description of the significant provisions of the Plan.  This summary highlights only certain provisions of the Plan and is not a substitute for a full and complete reading of the Plan.  A copy of the Plan is attached hereto as **EXHIBIT A.**  Creditors are referred to the Plan for a more thorough discussion of the provisions of

1500539.04

the Plan.  In case of any discrepancy between the terms of the Plan and the discussion

of the Plan in this Disclosure Statement, the terms of the Plan shall govern.

## A.    Classification of Claims and Interests

The Plan divides holders of Claims against the Debtor, other than Creditors with

Unclassified Claims, into Classes based on their legal rights to satisfaction of the Claims.

Only Allowed Claims shall receive distributions under the Plan.   Claims that have not

become Allowed Claims or that are subject to an objection before the Bankruptcy Court

or other pending litigation shall be entitled to receive distribution(s) under the Plan only

if and after the Claims become Allowed Claims.

Below is the estimated percentage recovery on account of Allowed Claims

and Equity Interests in each Class as well as Unclassified Claims under each of the Plans.

|  |  | Estimated % of Recovery[1] |
|---|---|---|
| Unclassified | Administrative Expense Claims | 100% |
| Unclassified | Tax Claims | 100% |
| Class 1 | Secured Claim of U.S. Department of Treasury | 100% |
| Class 2 | Secured Claims of Stephen Fernandez as settled | |
| Class 3 | Secured Claim of Estate of Michael Jackson | 100% |
| Class 4 | Other Secured Claims in Dispute | |
| Class 5 | General Unsecured Claims | 70% |
| Class 6 | Equity Interests in Vintage Associates, LLC | 0% |

## B.    TREATMENT OF CLAIMS AND INTERESTS

Allowed Claims and Interests in the following Classes shall receive the treatment

set forth in this section in complete satisfaction of all such Allowed Claims.  In no event

shall the Holders of such Allowed Claims receive (a) payment in excess of one hundred

(100%) percent of said Allowed Claims, or (b) interest accrued from and after the

Petition Date, unless otherwise specifically provided herein.  The determinations of the

---

[1] The estimated percentage of recovery is based upon an estimated net value at auction of $4,000,000. There is no assurance that the net proceeds of the Auction will be at or about $4 million.

1500539.04

value of Allowed Secured Claims for purposes of section 506 of the Bankruptcy Code shall be made as part of Confirmation.

1. <u>Secured Claim of U.S. Department of Treasury (Class 1)</u>

a. <u>Description</u>. The holder of the Class 1 Secured Claim consists of the claimant identified as the United States Department of the Treasury ("IRS"). The IRS holds a first and paramount lien on all the pre- and post-petition assets of the Debtor.

b. <u>Treatment</u>. The Holder of the Allowed Class 1 Secured Claim is the IRS. The post-petition secured claim of the IRS upon the Debtor's assets is scheduled at $574,322. The Class 1 creditor's claim shall be paid on the Distribution Date up to one hundred percent (100%) of the claim to the extent of available cash after payment of the costs of the Auction including professional and auctioneers fees and expenses incurred in connection with the Auction upon the Distribution Date. To the extent that the available cash is insufficient to satisfy the Class 1 Claim in full any deficiency shall be treated as an unsecured claim. **The Class 1 Claim is impaired.**

2. <u>The Stephen Fernandez Claim (Class 2)</u>

a. <u>Description</u>. Stephen Fernandez has filed a proof of claim in the amount of $319,000 as a secured claim. The claim arises from legal services provided by Mr. Fernandez and his law firm to an entity known as Vintage Pop, Inc. and Vaccaro during the years 2002 through 2007 for which Fernandez obtained a charging lien. Vintage Pop, Inc. was a predecessor in title to the Memorabilia. Vaccaro was a principal of Vintage Pop, Inc. and has knowledge of the charging lien. Fernandez alleges a security interest in the Memorabilia arising in 2002 from a "charging lien" under California law for legal services provided.

14

The Debtor had originally disputed the claim as being secured and that the Fernandez claim was an allowable claim in the Vintage case.  The Debtor had filed an objection to the allowance of the claim as secured and a hearing was set for September 10, 2013. Both parties recognized that their positions were at risk.

Fernandez and the Debtors negotiated a settlement of the extent and validity of the Fernandez claim as reflected in the Stipulation and Order entered by the Court on September 9, 2013 as Document #71.  Under the Stipulation and Order, Fernandez shall have a secured claim in this case in the amount of $175,000.  Its unsecured claim in this case is expunged.

b.   Treatment.  The Fernandez claims in the Vintage case consisting of claims # 5, 7 and 8 are expunged.  Claim #13 is allowed as a secured claim in the amount of $175,000 with priority over the Class 3 claim because claim was perfected by the granting of a charging lien in 2002; it will receive on the Distribution Date so much of the cash as is available after satisfaction of the Class 1 claim up to $175,000 without interest.

**The Class 2 claim is impaired.**

3.   Secured Claim of the Estate of Michael Jackson (Class 3)

a.   Description.   The holder of the Class 3 Secured Claim consists of the claimant identified as the Estate of Michael Jackson (the "Jackson Estate").  The Jackson Estate has a perfected lien in the pre-petition assets of Vintage in the amount of $500,000.  The Jackson Estate's lien is subordinate to the Class 1 and Class 2 liens.

b.   Treatment.  The Class 3 claim shall receive on the Distribution Date so much of the cash available as shall remain after paying the costs associated with the

Auction and the Class 1 and 2 claims in full up to one hundred (100%) percent of the claim without interest. To the extent that the Class 3 claim is not satisfied, any deficiency shall be treated as an unsecured claim.

**The Class 3 Claim is impaired.**

4.     Other Disputed Secured Claims (Class 4).    At this time, the Debtor identifies the following as representing the holders of UCC-1 financing statements filed against the Debtor and property of the estate, all of which are disputed:

(i)     UCC-1 filed by Howard Mann and DC Netcast Media;

(ii)    UCC-1 filed by Nance Hutter, Gerhard P. Hutter and Industrial Distribution Corp.

b.     Treatment.   To the extent that the claims of Howard Mann and DC Netcast Media and/or Nance Hutter, Gerhard P. Hutter and Industrial Distribution Corp. are determined not to be valid secured claims against the Debtor but are allowed as general unsecured claims, they shall either be treated as Class 5 claims or, if their claims are determined to be invalid *in toto*, their claims shall be extinguished.

If any of these claims are determined to be valid secured claims, they shall receive a distribution ahead of Class 5 claimants in the appropriate order of priority among all secured claimants, all without interest.

The Class 4 Creditors shall vote their claims in such class as is determined by the Court prior to confirmation and shall have no vote as Class 4 unless they are allowed as secured claims.  A Plan Supplement will be filed once the determination is made by the Court as to the allowance and classification of these claims.

**The Class 4 Creditors may be impaired.**

5.     General Unsecured Claims (Class 5)

16

1500539.04

a.    <u>Description</u>.    Class 5 is comprised of unsecured claims in the Vintage Case.

b.    <u>Treatment</u>.  The holders of allowed unsecured claims in the Vintage cases shall be paid on the Distribution Date from available cash remaining as generated by the Auction after payment in full of all costs of the auction, the Class 1, Class 2, Class 3 claims and Class 4 claims (if allowed) and all allowed priority and administrative claims up to one hundred percent (100%).  Class 5 allowed claims shall share pro rata in remaining available cash until paid in full without interest.

**Class 5 Claims are impaired**.

6.    <u>Equity Interests (Class 6)</u>

a.    <u>Description</u>. The Equity Interests in Vintage Associates, LLC consist of the membership interests in Vintage held by the equity interest holders as follows:

| | |
|---|---|
| Henry V. Vaccaro Sr. | 30% |
| Henry V. Vaccaro Jr. | 35% |
| Keith Lowy | 5% |
| Mark Bahary | 10% |
| Sandra C. Burlew | 10% |
| Toni R. Bahary | 10% |

b.    <u>Treatment</u>.  The holders of the Equity Interest(s) in Vintage which are classified in Class 6 as Holders of Equity Interests shall receive on account of their respective interests in the Debtor so much if any of the net proceeds remaining from the available cash after payment in full without interest of the prior claims including Classes 1, Class 2, Class 3, Class 4 (if allowed) and Class 5.  In the event that there is

no available cash remaining, the holders of the equity Interests shall receive nothing.

Any cash distributed to Vaccaro shall pass to the Distribution Agent in the Vaccaro case.

**Class 6 interests are impaired.**

7.    Unclassified Claims.  Section 1123(a)(1) of the Bankruptcy Code provides

that certain Claims, including Administrative Expense Claims and Tax Claims, shall not

be designated into Classes.  The Unclassified Claims treated herein are described in this

Section 5.07.

a.    Administrative Expense Claims.  Except to the extent that the

Holder of an Allowed Administrative Expense Claim agrees otherwise, Holders of

Allowed Administrative Expense Claims shall receive, on the later of (a) the Effective

Date (or as soon as practicable thereafter), (b) the date on which such Claims become

Allowed Administrative Expense Claims in each case, or (c) the date upon which such

Claim is to be paid under its terms, payment in Cash of one hundred (100%) percent of

said Allowed Administrative Expense Claim.  In order to be entitled to payment, such

Claims must be asserted, and become Allowed Claims.

b.    Claims of Professionals.  The allowed claims of Debtor's

Professionals shall be paid, upon allowance, in full on the Distribution Date.  Final Fee

Applications for all Professionals retained in the case for compensation for services

rendered and expenses incurred through the Effective Date shall be filed within thirty

(30) days from the Effective Date.

c.    Tax Claims.  Except to the extent that the Holder of an Allowed Tax

Claim agrees otherwise, Holders of Allowed Tax Claims in each case shall receive, after

the later of (a) the Effective Date (or as soon as practicable thereafter) and (b) the date

on which such Claim becomes an Allowed Claim, either payment in Cash of one

hundred (100%) percent of said Allowed Tax Claim, with interest if allowable under applicable law or at the Debtors' election, treatment as provided in Section 1129(9)(C). The Holder of an Allowed Tax Claim will not be entitled to receive any payment on account of any penalty arising, with respect to, or in connection with, the Allowed Tax Claim. Any such Claim for penalty will be deemed a Class 5 claim.

      d.   United States Trustee Fees. All fees payable by the Debtor under Section 1930 of Title 28 of the United States Code that have not been paid prior to the Effective Date shall be paid by the Debtor on the Effective Date.

## C.   **Means of Implementing the Plan**

    1.   Transactions on and After the Effective Date

      On and after the Effective Date, the following shall occur:

      (a)   Implementing the Plan. The Plan shall be implemented by the scheduling and holding of a public auction to be run by an auctioneer of Debtor's choice. The Debtor has chosen Darren Julien Auction House in Los Angeles, California. The auction shall be scheduled within 60 to 90 days following confirmation of the Plan. The net proceeds of the auction shall be distributed to the holders of allowed claims in accordance with the priorities in the Bankruptcy Code.

    2.   Distribution of Property

      (a)   Requirement for Allowance of Claims

      No Distributions will be made on account of any Claim that is not an Allowed Claim. Debtors shall have a period of ninety (90) days following the Effective Date to file objections to claims.

      (i)   Claims filed after the Bar Date will not be allowed and will receive no distribution without the entry of an Order of the Court

specifically allowing such claim.

(b)     Time and Method of Distributions

Distribution under the Plan will be made in accordance with the priorities in the Bankruptcy Code.  Distributions under the Plan will be made by the Greenbaum Rowe Smith & Davis LLP as Distribution Agent.  Unless the entity receiving a payment agrees otherwise, any payment in Cash to be made by the Distribution Agent will be made, at the election of the Distribution Agent, by check drawn on a domestic bank or by wire transfer from a domestic bank.

Subject to the provisions of Bankruptcy Rule 2002(g), and except as provided in the Plan, Distributions to Holders of Allowed Claims will be made at the address of each such Holder set forth on the Schedules unless superseded by the address set forth on proofs of Claim filed by such Holders, or at the last known addresses of such Holder if no proof of Claim is filed, or if the Distribution Agent or Debtor has been notified in writing of a change of address.  Upon completion of the initial distribution, counsel for the Distribution Agent shall immediately take all actions necessary to obtain an order closing the Bankruptcy Case pursuant to section 350 of the Bankruptcy Code.

(c)     Time Bar to Cash Payment

Any Unclaimed Property will be deemed paid to such entitled Holder, and such Holder will not be entitled to any future Distributions under the Plan.  Any Unclaimed Property shall constitute Available Cash and be redistributed to Holders of Allowed Claims in such Class on the date of the next Distribution.  If the Final Distribution Date has passed, such Unclaimed Property shall be deposited with the Registry maintained by the Clerk of the United States Bankruptcy Court for the District

of New Jersey.

(d)   Compliance with Tax Requirements/U.S. Trustee Fees

Debtor must comply with all withholding and reporting requirements imposed on it by taxing authorities and governmental units and the Debtors' obligations to pay the U.S. Trustee's quarterly fees under 28 U.S.C. §1930(a)(6).   In order to permit the U.S. Trustee to properly calculate any fees owed under 28 U.S.C. §1930(a)(6), Debtor shall file quarterly interim statements with the U.S. Trustee.

(e)   Set-Offs

Debtors may, pursuant to sections 502 and 553 of the Bankruptcy Code or applicable non-bankruptcy law, set off against any Allowed Claim, and the Distributions to be made pursuant to the Plan on account thereof (before any Distribution is made on account of such Claim), the claims, rights, and causes of action of any nature that Debtors may have against the Holder of such Allowed Claim; provided, however, that neither the failure to effect such a setoff, nor the allowance of any Claim under the Plan, will constitute a waiver or release by Debtor, of any such claims, rights, and causes of action that Debtor may possess against such Holder; and, provided, further, that nothing contained in the Plan is intended to offset the rights of any Creditor to effectuate a setoff prior to the Effective Date in accordance with the provisions of sections 362 and 553 of the Bankruptcy Code.

(f)   De Minimus Distributions

Any other provision of the Plan notwithstanding, the Distribution Agent shall not be required to make Interim Distributions to any creditor in an amount less than $10.00.   Cash allocated to an Allowed Claim but withheld from an Interim Distribution pursuant to this subsection shall be held by Debtor for the account of and

1500539.04

future distribution to the Holder of such Allowed Claim.  Cash allocated to an Allowed Claim but withheld from the Final Distribution pursuant to this subsection shall be distributed as provided in the Final Distribution provisions of the Plan, and the Holder of such Allowed Claim shall have no further interest therein or rights with respect thereto. As of the date of this Disclosure Statement and pending any claims filed or allowed, no creditors will be receiving a De Minimis Distribution.

      (g)    Treatment of Disputed Claims

          (i)    Estimation of Claims

      Debtor may at any time request that the Bankruptcy Court estimate any contingent or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code. The Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, an objection during the pendency of any appeal relating to any such objection.  Subject to the provisions of section 502(j) of the Bankruptcy Code, in the event that the Bankruptcy Court estimates any contingent or Disputed Claim, the amount so estimated will constitute the Allowed amount of such Claim.  If the estimated amount does not constitute a maximum limitation on the amount of such Claim, Debtor may pursue supplementary proceedings to object to the allowance of such Claim.  All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not necessarily exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.  Nothing herein is intended to limit or change the rights afforded creditors under the Bankruptcy Code, nor limit any rights of appeal from an Order of the Bankruptcy Court.

(ii)    Payments and Distributions on Disputed Claims

Debtor shall maintain a reserve on account of any distributable amounts required to be set aside on account of Disputed Claims as necessary to provide required distributions as if such Claim were an Allowed Claim.  The reserves shall be established in separate accounts.

At such time as a Disputed Claim becomes, in whole or in part, an Allowed Claim, Debtor may, but shall not be required to, distribute to the Holder thereof the Distributions, if any, to which such Holder is then entitled under the Plan.  Such Distribution, if any, will be made on the earlier of the next Interim Distribution date or ninety (90) days after the date that the order or judgment of the Bankruptcy Court allowing such Disputed Claim becomes a Final Order.  No interest will be paid on Disputed Claims that later become Allowed or with respect to any Distribution to such Holder.

(iii)    Pre-Payment of Allowed Claims

Debtor shall have the absolute right, in its sole discretion, to pre-pay at any time all or a portion of (i) any class of Allowed Claims so long as each claimant in the Class is paid the same proportional amount, and (ii) any Unclassified Claim.  Any prepayment shall be without penalty or interest.

3.    Post-Effective Notice

Unless otherwise required under the terms of the Plan, on and after the Effective Date, all notices required to be given in this Case must be given to counsel to the Debtor and the United States Trustee.  Notices shall be delivered via electronic mail, facsimile, overnight courier service, or first-class U.S. mail, postage prepaid.  Any notice

1500539.04

provided to the parties specified herein and in accordance herewith shall be deemed duly given and sufficient.

4.      <u>Limitation of Liability of Professionals in Connection with the Case, the Plan, Disclosure Statement and Related Documents</u>.

Section 1123(b)(6) of the Bankruptcy Code provides that a plan may contain any appropriate provision that is not inconsistent with the applicable provisions of the Bankruptcy Code.  Pursuant to section 1123(b)(6) of the Bankruptcy Code, the Debtor, its present and former owners, members, officers, directors, trustees, employees, agents, designees, successors or assigns, and any professional person including but not limited to counsel and financial advisors to the Debtor (acting in such capacity) employed by any, of the foregoing entities or by the Debtor, (collectively, the "Plan Participants") will neither have nor incur any liability to any Person for any act taken or omitted to be taken after the Petition Date in connection with or related to the Case, including, but not limited to the formulation, preparation, dissemination, implementation, Confirmation or consummation of this Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document created or entered into, or any other act taken or omitted to be taken in connection with the Plan, the Disclosure Statement, or the Confirmation Order, including solicitation of acceptances of this Plan ("Exculpated Conduct"); provided, however, that the Debtor and any Professional retained by the Debtor can incur liability as a result of any such act or omission to the extent that such act or omission constitutes fraud, gross negligence or willful misconduct or willful violation of federal or state securities laws or the Internal Revenue Code. All Persons are permanently enjoined from commencing, or continuing in any manner, any action or proceeding

1500539.04

against the Debtor and any of the Professionals retained by the Debtor, whether directly, derivatively, on account of or respecting any claim, debt, right, or cause of action based in whole or in part upon any Exculpated Conduct.  Exculpation under this provision does not include any acts occurring prior to the Petition Date.    Nothing contained in the Plan, including this section, shall relieve the Debtor from making payments to the United States Trustee when due as required by 28 U.S.C. §1930(a)(6) and by the terms of the Plan.

## V.    DISCLOSURES REQUIRED BY 11 U.S.C. §§1129(a)(4) AND (5)

Section 1129(a)(4) of the Bankruptcy Code provides that a plan can be confirmed only if any payment made or to be made by a debtor or by a person issuing securities or acquiring property under a plan for services or for costs and expenses in connection with the case or in connection with the plan and incident to the case, has been approved by, or is subject to approval by the Bankruptcy Court as reasonable. Article VI of the Plan meets the requirements of §1129(a)(4) of the Bankruptcy Code.

Section 1129(a)(5) of the Bankruptcy Code conditions confirmation on disclosure of the identity and affiliates of any individual proposed to serve after Confirmation as a director, officer, or voting trustee of the Debtor.  Section 1129(a)(5) further requires that:  (i) appointment to or continuance in such office of such individual be consistent with the interests of Creditors and equity security holders and with public policy; and (ii) the Debtor discloses the identity of any insider who will be employed or retained by the organized entity and the nature of any compensation for such insider.  There shall be no management of the Debtor post the Effective Date.

## VI.    FEASIBILITY

1500539.04

Section 1129(a)(l1) of the Bankruptcy Code requires that confirmation not likely be followed by liquidation or the need for further financial reorganization unless such liquidation is proposed by the Plan. The Plan is a plan of liquidation. Debtor is unaware of any impediment to Confirmation of the Plan. The Plan provides for the disbursement of the cash available for distribution to Holders of Allowed Claims as set forth in the Plan in accordance with the priority scheme of the Bankruptcy Code.

## VII.  LIQUIDATION ANALYSIS

Another confirmation requirement is the "Best Interest Test", which requires a liquidation analysis. Under the Best Interest Test, if a claimant or interest holder is in an impaired class and that claimant or interest holder does not vote to accept the Plan, then that claimant or interest holder must receive or retain under the Plan property of a value not less than the amount such holder would receive or retain if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code.

In a Chapter 7 case, the Debtor's assets are usually sold by a Chapter 7 trustee. Secured creditors are paid first from the sales proceeds of properties on which the secured creditor has a lien. Administrative claims of the Chapter 7 are paid next. Next, administrative claims of the Chapter 11 are paid. Unsecured creditors are paid from any remaining proceeds, according to their right to priority. Unsecured creditors with the same priority share in proportion to the amount of their allowed claims. Finally, interest holders receive the balance that remains after all creditors are paid, if any.

In order for the Court to be able to confirm this Plan, the Court must find that all creditors and interest holders who do not accept the Plan will receive at least as much under the Plan as such holders would receive under a Chapter 7 liquidation. The Plan Proponent maintains that this requirement is met here because in the event of

26

conversion to Chapter 7, the Chapter 7 administration costs would deplete cash available for creditors.

Below is a demonstration, in balance sheet format, that all creditors and interest holders will receive at least as much under the Plan as such creditor or interest holder would receive under a Chapter 7 liquidation:

### ASSETS

| | | |
|---|---|---|
| Memorabilia | | $4,000,000.00[2] |
| Tax Lien | $ 574,000.00 | |
| Estate of Michael Jackson lien | $ 500,000.00 | |
| Steven Fernandez claim | $ 175,000.00 | |
| Costs of Sale (10%) | $ 400,000.00 | |
| Total Credits | $1,649,000.00 | |

**Total Assets:** **$2,351,000.00**

### LIABILITIES

Priority and Administrative Claims:

| | | |
|---|---|---|
| Chapter 7 Admin. Expenses: | $200,000.00 | |
| Chapter 11 Admin. Expenses: | $200,000.00 | |
| Other Priority and Administrative Claims (UST and Rathe): | $ 30,000.00 | |
| **TOTAL PRIORITY CLAIMS** | | **$ 430,000.00** |

Amount Available for unsecured claims (Total assets minus priority claims) **$1,921,000.00**

**TOTAL UNSECURED CLAIMS:**

Estimated Dividend in Chapter 7 **71%**
(amount available - unsecured claims)

In the Chapter 11, the administration expense of the Chapter 7 will be eliminated providing at least an additional $200,000 available for distribution to unsecured creditors and resulting in a potential dividend percentage of 77%. In addition, distribution will be made shortly after the auction.

## VIII.   RELEASE OF CLAIMS AGAINST INSIDERS AND AFFILIATES

There are no claims against insiders and affiliates.

## IX.   CONFIRMATION

---

[2] The number $4,000,000 is an estimate of value only.

27

The purpose of this Disclosure Statement is to provide Creditors with adequate information to enable them to make an informed decision regarding the merits of the Plan. A hearing on this Disclosure Statement was held on _____ ___, 2013 at 11:00 a.m. The Bankruptcy Code contemplates that Creditors will vote with regard to Chapter 11 plan of reorganization. The following paragraphs summarize the voting and the confirmation requirements in Chapter 11 proceedings. This summary constitutes neither a complete recital of the Bankruptcy Code requirements regarding voting and confirmation nor a conclusive statement of Creditor rights. Any Creditor or Interest Holder with questions concerning voting, confirmation, or other matters should seek the advice of counsel. Pursuant to Bankruptcy Code section 1129, in order to confirm the Plan, the Bankruptcy Court must find, among other things that: (i) the Plan complies with applicable provisions of the Bankruptcy Code; (ii) the Debtor has complied with the applicable provisions of the Bankruptcy Code; (iii) the Debtor proposed the Plan in good faith and not by any means forbidden by law; (iv) the Debtor has made the disclosure required by Section 1125 of the Bankruptcy Code; (v) the Plan has been accepted by the requisite vote of Creditors; (vi) the Plan is feasible and Confirmation is not likely to be followed by liquidation unless such liquidation is provided for in the Plan; (vii) the Plan is in the best interest of Creditors by providing to Creditors on account of such claims or Interest property of a value, as of the Effective Date, that it is not less than the amount that such Creditor would receive or retain in a Chapter 7 liquidation; (viii) all fees and expenses required under 28 U.S.C. §1930 as determined by the Bankruptcy Court a hearing on confirmation have been paid or the Plan provides for payment of such fees on the Effective Date; and (ix) the Plan addresses Priority Claims. As indicated above, the Plan must be accepted by the requisite vote of Creditors in

28

order to be confirmed by the Bankruptcy Court. Section 1129 of the Bankruptcy Code requires that each Class of Claims accept the Plan by the requisite majority, or that the class be unimpaired under the Plan and deemed to have accepted the Plan without solicitation. Only Creditors holding Claims which are impaired under the Plan are entitled to vote to accept or reject the Plan. Generally a class is "impaired" unless the legal, equitable or contractual rights attaching to the Claims of that class are unaltered by the Plan or the Plan proposes to cure pre-Petition Date defaults and reinstate maturities and compensate the holder of such Claim for any damages or proposes payment in full in cash.

**Classes 1, 2, 3, 4 and 5 are impaired; only holders of Allowed Claims in those classes are entitled to vote to accept or reject the Plan.**

The majorities are required for acceptance by an impaired class relate to both the amount of Allowed Claims in the class and the number of members in the class that actually vote for acceptance or rejection of the Plan. An impaired class is deemed to have accepted the Plan if the holders of at least two-thirds in dollar amount and a majority in number of the Allowed Claims of the class vote to accept the Plan. Only holders of Allowed Claims entitled to vote, who actually do vote to accept or reject the Plan are counted in this tabulation. A Creditor's vote may be disregarded to the extent the Bankruptcy Court determines that Debtors did not solicit or procure the Creditor's acceptance or rejection in good faith.

If the Plan is accepted by all classes that are impaired under the Plan, the Plan will be confirmed provided that the Bankruptcy Court finds that the Plan satisfied the other conditions set forth in section 1129(a) of the Bankruptcy Code. If, however, the voting members of an impaired class do not unanimously vote for the Plan, but

29

nevertheless accept the Plan by at least the requisite two-thirds of the amount and a majority number of claims that are actually voted, then to be confirmed over the objection of a member of such impaired class, the Plan must provide that each member of the class receive property of the value, as of the Effective Date, not less than the amount such Creditor would receive under Chapter 7 of the Bankruptcy Code. The Plan may be confirmed even though it is not accepted by all impaired classes to the extent (i) at least one impaired class accepts the Plan; (ii) the Plan is "fair and equitable" as to those impaired classes not accepting the Plan; (iii) the Plan does not "discriminate unfairly" against any impaired class electing not to accept the Plan, and (iv) the Plan meets the conditions set forth in section 1129(b) of the Bankruptcy Code regarding cram down. The "fair and equitable" standard requires, among other things that (i) no holder of a claim or interest in any class junior to any dissenting class of unsecured Claims receive or retain an account of such Claims or Interest unless the dissenting class of unsecured Claims receives full compensation for its Allowed Claims; and (ii) the members of any dissenting class of secured claims either retain their lien and receive deferred cash payments with a value as of the Effective Date of the Plan equal to the value of their interest in the Debtor's property or otherwise receive the "indubitable equitable" standard to prohibit any class of Claims senior to a dissenting class from receiving greater than one hundred (100%) percent of the value of the Allowed Claims in the class. The requirement that the Plan not "discriminate unfairly" simply means that the dissenting class must be treated substantially the same as other classes of equal rank. Debtor intends to rely upon the cram down provisions of the Bankruptcy Code to the extent necessary.

1500539.04

## X.    POST-CONFIRMATION

### A.    Post-Confirmation Conversion/Dismissal

A creditor or party in interest may bring a motion to convert or dismiss the Case under section 1112(7) after the Plan is confirmed if there is a default in performing the Plan.  If the Bankruptcy Court orders the Case converted after the Plan is confirmed, property of the Estate that has not been disbursed pursuant to the Plan will revest in the Chapter 7 estate.

The Bankruptcy Court may revoke the order if and only if the Confirmation Order was procured by fraud and if a party in interest brings a motion to revoke Confirmation within one hundred eighty (180) days after the entry of the Confirmation Order.

## XI.    CONCLUSION

The Debtor believes that acceptance of the Plan by Creditors is in the best interest of all parties, and that Confirmation will provide the best and most prompt recovery for Creditors.  The Debtor urges all parties to vote in favor of the Plan.

**VINTAGE ASSOCIATES, LLC**

*/s/Henry V. Vaccaro, Sr.*

**Dated:  September 13, 2013**        By:_____

1500539.04